

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re | 2011 TSPR 129 |
| | |
| | 182 DPR _____ |
| Daniel Muñoz Fer        nós | |
| Miguel Morell Chard        ón | |

Número del Caso: CP        - 2009 - 5

Fecha: 6 de septiembre de  2011

Oficina de la Procuradora General:

> Lcda. Minnie H. Rodríguez López
> Procuradora General Auxiliar

Abogado del Querellado:

> Por derecho propio

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilació      n y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:      Daniel Muñoz Fernós
            Miguel Morell Chardón

                    CP-2009-005

                    PER CURIAM

En San Juan, Puerto Rico, a 6 de septiembre de 2011.

En el presente caso nos corresponde atender un señalamiento ético contra dos abogados que suscribieron un contrato de servicios profesionales con el propósito de representar a múltiples codemandantes en un caso de daños y perjuicios. En específico, debemos examinar si los abogados actuaron correctamente al crear, mediante dicho contrato, un comité de codemandantes que se encargaría de mantener -en calidad de intermediarios- la comunicación entre la representación legal y los demás codemandantes. Asimismo, debemos evaluar la diligencia desplegada por los abogados querellados ante la falta de cooperación de sus clientes durante un proceso litigioso.

I.

El Lcdo. Daniel Muñoz Fernós fue admitido a la abogacía el 3 de marzo de 1989, y, el Lcdo. Miguel Morell Chardón el 30 de noviembre de 1977.

En el año 1998, veintinueve empleados del Colegio Regional de Carolina de la Universidad de Puerto Rico contrataron los servicios profesionales del bufete Morell Chardón & Muñoz Fernós para que les representara en una reclamación de daños y perjuicios contra unos contratistas independientes de su patrono.[1] Dicho bufete se componía de los dos abogados aquí querellados. Aunque el contrato de servicios profesionales expresa que compareció el bufete, el mismo fue firmado únicamente por el licenciado Muñoz Fernós.

Como parte de lo estipulado con el bufete, todos los codemandantes también firmaron el referido contrato de servicios profesionales y recibieron una orientación sobre el alcance de éste y las responsabilidades a cumplir por parte de los clientes para una adecuada representación. Por la naturaleza del caso, también se les orientó y advirtió sobre la necesidad de contratar a dos peritos, un experto ambiental y un neumólogo. Asimismo, en el referido contrato se estableció claramente la necesidad de que los codemandantes

---

[1] Varias empresas fueron utilizadas como contratistas independientes para realizar trabajos de sellado de techos en el Colegio Regional de Carolina. Dichos contratistas aplicaron asfalto para sellar el techo del edificio de ciencias naturales, lo que alegadamente resultó en la liberación de unos vapores y gases nocivos a la salud de quienes trabajaban cerca. A raíz de ello, un grupo de empleados de la Universidad (los codemandantes) recibió atención médica de la Corporación del Fondo de Seguro del Estado (C.F.S.E.).

se comunicaran periódicamente con el bufete. A tales efectos,

se incluyó la siguiente cláusula:

> Cuarto: Es una condición indispensable del presente contrato el que LOS CLIENTES mantengan comunicación continua con LOS ABOGADOS, llamándolos o visitándolos por lo menos una vez semanalmente para conocer el status del caso a radicarse. A estos fines se ha creado un comité de demandantes compuesto por los siguientes demandantes: Diana Ramírez Natal, Alma Ramos Ortiz, Angelina Díaz González y Carmen Serrano Collazo. Esto no impide que cualesquiera de LOS CLIENTES pueda llamar en un momento dado a LOS ABOGADOS, y vice-versa, para atender asuntos individuales de cada reclamante.

De esta manera, se pretendió que un comité (Comité de Comunicación) mantuviera comunicación entre los abogados y los codemandantes. De igual manera, cualquier reclamante podía comunicarse directamente con la oficina de los abogados para obtener información del caso.

En cumplimiento con su obligación, el 27 de febrero de 1998, el bufete presentó la correspondiente reclamación ante el Tribunal de Primera Instancia, Sala Superior de Carolina.[2] La demanda fue suscrita por ambos abogados aquí querellados.

Durante el proceso litigioso, la Sra. Alma I. Ramos Ortiz, una de las codemandantes que formaba parte del Comité de Comunicación y quien figura como la quejosa en el presente proceso disciplinario, utilizó los servicios profesionales del licenciado Muñoz Fernós para al menos cuatro asuntos personales ajenos al caso de daños y perjuicios. Para esos cuatro asuntos, por los cuales el abogado no cobró, ésta no tuvo inconveniente alguno para localizar y comunicarse con el

---

[2] El caso fue identificado como <u>Diana Ramírez Natal y otros v. Shamal Construction S.E.; REPCO Construction S.E.; REPCO Construction, Inc. y otros</u>, Civil Núm. FDP1998-0175.

abogado y, según se desprende del expediente, éste la atendió satisfactoriamente.

El licenciado Muñoz Fernós también atendió otras gestiones personales en calidad de representante legal de la codemandante Sra. Diana Ramírez Natal, resultando en la obtención por ésta de una compensación reclamada administrativamente. Por las gestiones a favor de la señora Ramírez Natal no se instaron quejas disciplinarias, por lo que suponemos que las mismas también fueron realizadas satisfactoriamente. Cabe señalar, además, que, durante el presente procedimiento disciplinario, los abogados querellados alegaron haber asesorado a los codemandantes y a familiares de éstos de forma gratuita en más de quince ocasiones. Por esas otras gestiones tampoco se presentaron quejas disciplinarias.

No obstante, el pleito de daños y perjuicios ante la Sala de Carolina fue desestimado con perjuicio el 17 de mayo de 2002, a causa de la incomparecencia de los codemandantes y su incumplimiento con órdenes del Tribunal de Primera Instancia. El 25 de junio del mismo año, el foro primario reabrió el caso, a solicitud de los abogados aquí querellados, en aras de que se dilucidara la controversia en sus méritos. Finalmente, el 22 de enero de 2003, volvió a desestimar el pleito con perjuicio por abandono.

Así las cosas, la señora Ramos Ortiz presentó una queja contra los querellados ante la Secretaría de este Tribunal a nombre propio y en representación de los demás codemandantes. La queja fue instada originalmente contra el licenciado Muñoz

Fernós y durante el trámite disciplinario autorizamos a la Oficina de la Procuradora General a incluir al licenciado Morell Chardón. Esto, pues ambos participaron de orientaciones, entrevistas con los clientes, y en los trámites del caso.

En la queja, la señora Ramos Ortiz expresó que advino en conocimiento de que se había emitido una sentencia de archivo con perjuicio en el caso que tramitaba Muñoz Fernós. Alegó que dicho abogado nunca le cursó documento alguno emitido por el tribunal, a pesar de que había recibido órdenes específicas del propio tribunal a esos fines. Asimismo, añadió que mientras el caso fue objeto de desestimación en dos ocasiones distintas, ni los codemandantes ni ella tuvieron conocimiento de ello. Como exponemos más adelante, la comunicación entre los abogados querellados y la señora Ramos Ortiz resultaría ser de medular importancia para este proceso disciplinario pues, por distintos motivos, los otros miembros del Comité de Comunicación se abstuvieron de realizar su encomienda y todos descansaron en que ella realizaría la comunicación con los abogados.

Los abogados respondieron la queja. El licenciado Muñoz Fernós alegó que nunca recibió respuesta de la señora Ramos Ortiz cuando le notificó la sentencia mediante la cual se desestimó el caso por segunda ocasión. Añadió que siempre mantuvo a los clientes al tanto del proceso y les informó a través de Ramos Ortiz de todo lo que pasaba. Además, expresó que envió varios formularios a los demandantes pero éstos no los devolvieron o cumplimentaron, por lo que alegó que los

clientes no fueron diligentes en apoyar la tramitación de su reclamación. Por su parte, el licenciado Morell Chardón alegó que respondió a las llamadas telefónicas de la señora Ramos Ortiz cuando el licenciado Muñoz Fernós no estaba en la oficina y que atendió a ésta, quien les visitaba regularmente.

Así las cosas, ordenamos a la Oficina de la Procuradora General a presentar la querella de autos y ésta le imputó a los querellados la violación de los Cánones 12, 18 y 19 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. En síntesis, la querella alega que los abogados incumplieron con el deber de diligencia necesario para evitar que se causaran dilaciones indebidas en la tramitación y solución del caso, en violación al Canon 12, *supra*; que no cumplieron con los principios que exige el Canon 18, *supra*, de defender diligentemente los intereses de sus clientes, lo que resultó en el archivo con perjuicio de una demanda, y que los abogados querellados violaron el Canon 19, *supra*, al no mantener informados a sus clientes de manera adecuada sobre los trámites del caso.

En febrero de 2010, mediante Resolución, nombramos a la Hon. Eliadís Orsini Zayas, ex jueza del Tribunal de Primera Instancia, para que en presencia de las partes y en calidad de Comisionada Especial recibiera la prueba y nos rindiera un informe con sus determinaciones de hechos y recomendaciones que estimara pertinentes. Habiendo celebrado una vista inicial, una conferencia con antelación y una vista evidenciaria que duró dos días, la Comisionada Especial

rindió un informe detallado de la prueba desfilada y varias conclusiones de derecho.

En la vista evidenciaria, la Comisionada Especial recibió el testimonio de siete de los veintinueve codemandantes, incluyendo a la señora Ramos Ortiz. Dichos testigos fueron contrainterrogados por cada uno de los abogados querellados. La Comisionada Especial concluyó, a base de la prueba testifical, que no todos los clientes cooperaron satisfactoriamente con los abogados para una representación adecuada. Por ejemplo, no contestaron prontamente los interrogatorios que los abogados querellados les enviaron a pesar de que se les advirtió y orientó sobre las consecuencias de la tardanza. Asimismo, no todos entregaron sus expedientes médicos a pesar de que se les solicitaron y recibieron explicaciones de parte de los abogados sobre la importancia de dicha prueba. Tampoco aportaron a la contratación de los peritos a pesar de las advertencias claras que al respecto le hicieron los abogados desde el inicio de la contratación y en lo subsiguiente. De hecho, quedó establecido que los abogados no recibieron suma alguna para la contratación de la prueba pericial y habían advertido a sus clientes que ellos no pagarían ese gasto. Durante todo el proceso del litigio, los abogados sólo recibieron ochenta dólares para los gastos iniciales.

Asimismo, los abogados plantearon que solicitaron a los codemandantes que entregaran las resoluciones emitidas por el Fondo del Seguro del Estado sobre sus reclamaciones para poder determinar si el Fondo acudiría a los tribunales

mediante acción de subrogación. Sin embargo, los clientes tampoco las proveyeron.

Por su parte, los abogados testificaron que hicieron múltiples gestiones al respecto. Entre ellas, se trasladaron en más de una ocasión al Colegio Universitario de Carolina para reunirse y orientar a los demandantes. Asimismo, adujeron que fueron los clientes quienes voluntariamente y por iniciativa propia establecieron un comité para que los representara ante los abogados y se encargara de los requerimientos del litigio.

Del testimonio de algunos de los codemandantes que se recoge en las determinaciones de la Comisionada Especial surge que algunos de los codemandantes sí aportaron dinero para la contratación de los peritos necesarios, pero que ese dinero le fue entregado a la señora Ramos Ortiz quien lo retuvo para sí y no informó a los abogados de las sumas retenidas. Incluso, luego de un tiempo y tras la desestimación del caso, la señora Ramos Ortiz sólo les devolvió parte de las cantidades entregadas por los codemandantes.

La Comisionada Especial concluyó además que, a pesar de que la Oficina de la Procuradora General aseguró que los abogados nunca le comunicaron a los codemandantes la desestimación del caso, una carta del 3 de febrero de 2003 suscrita por el licenciado Daniel Muñoz Fernós, y dirigida a los codemandantes, derrota esa aseveración. En dicha carta se les informó a estos que el caso fue desestimado, que la desestimación era errónea, a su entender, y que tenían

derecho a apelar dentro de treinta días, por lo que necesitaba reunirse con ellos. Además, esa carta se acompañó con copia de la sentencia.

Asimismo, surge del expediente que el 26 de septiembre de 2002, los abogados enviaron una carta a los clientes mediante la cual recalcaron la necesidad de que cooperaran con el descubrimiento de prueba y aportaran el dinero necesario para contratar los peritos.

En sus conclusiones, la Comisionada Especial resaltó que todos los codemandantes son profesionales con estudios universitarios y algunos de ellos poseen estudios posgraduados. Así las cosas, también concluyó que la alegada falta de comunicación, si en algún momento ocurrió, es imputable a los propios clientes, quienes se desentendieron del caso, nunca se comunicaron directamente con los abogados ni visitaron sus oficinas después de la firma del contrato de servicios profesionales, descansando sólo en la señora Ramos Ortiz para su información, contrario a lo que habían acordado mediante el contrato de servicios profesionales que todos suscribieron. De igual forma, la Comisionada, concluyó que no existe prueba suficiente sobre la violación a los Cánones 18 y 19 del Código de Ética Profesional, *supra*, pero sí en cuanto a la violación del Canon 12, *supra*. Es decir, que los abogados fueron diligentes en su gestión conforme al Canon 19, *supra*, y no actuaron de manera que mantuvieran a sus clientes desinformados de los asuntos importantes del caso. No obstante, de acuerdo a la Comisionada, éstos no actuaron conforme al deber de puntualidad y diligencia que exige el

Canon 12, *supra*, porque, según señaló, los abogados querellados debieron renunciar a la representación de los codemandantes cuando notaron que éstos se habían desentendido del caso y no pretendían cooperar.

Así las cosas, la Oficina de la Procuradora General compareció ante nos en un escrito en reacción al informe de la Comisionada Especial. En este escrito, se objetan las conclusiones a las que llegó la Comisionada, así como la conclusión de que cualquier ausencia de diligencia fue como consecuencia de la falta de cooperación de los clientes.

La Procuradora General sostiene que, en su opinión, el expediente del caso ante el Tribunal de Primera Instancia que da lugar a la querella de autos demuestra una ausencia significativa de escritos por parte de los demandantes, por lo que los abogados, a su parecer, no fueron diligentes en el manejo del caso. Asimismo, hace referencia a la moción de reconsideración que presentaron los abogados querellados tras la primera desestimación que hiciera el foro de instancia. La Procuradora entiende que, si en efecto el manejo del caso se vio afectado por la falta de diligencia de los clientes, entonces los abogados debieron señalarlo en aquel momento. Los abogados, sin embargo, no culparon a sus clientes en sus escritos ante el foro de instancia.

La Procuradora aduce, además, que en un escrito ante el Tribunal de Primera Instancia, los abogados mencionan que sus clientes se encuentran "de alta" ante la C.F.S.E. y, sin embargo, los abogados plantearon durante el proceso disciplinario que sus clientes no cooperaron con devolver un

formulario que se les solicitó para obtener información de sus casos ante la mencionada corporación.

Finalmente, la Procuradora expone que los abogados y los codemandantes se confiaron del Comité de Comunicación y no fueron diligentes. Según la Procuradora, los abogados no podían delegar su deber de mantener informados a todos los clientes. No debían, pues, cruzarse de brazos. Asimismo, la comunicación que éstos hayan sostenido con la señora Ramos Ortiz no derrota la responsabilidad de comunicarse individualmente con los demás demandantes.

A raíz de los hechos expuestos, debemos atender dos controversias. En primer lugar, si los abogados fueron diligentes frente a sus clientes y ante el Tribunal de Primera Instancia y, en segundo lugar, si es antiético llegar a un acuerdo de comunicación a través de un intermediario, como se hizo en el presente caso. Contando con la comparecencia de los quejosos, los querellados, la Oficina de la Procuradora General y un informe específico y detallado de la Comisionada Especial, procedemos a resolver.

## II.

Como se sabe, los Cánones de Ética Profesional establecen las normas mínimas de conducta que rigen a los miembros de la profesión legal en el desempeño de su labor. In re Torres Viñals, res. el 8 de diciembre de 2010, 2010 T.S.P.R. 223; In re Pujol Thompson, 171 D.P.R. 683 (2006). Los Cánones de Ética Profesional tienen como objetivo promover que los abogados se desempeñen en el aspecto profesional y personal acorde con los más altos principios de

conducta decorosa, para el beneficio de todos en la profesión, la ciudadanía a quien vienen llamados a servir y las instituciones de justicia del país. In re Hernández Pérez, 169 D.P.R. 91, 101-102 (2006).

Con el propósito de atender querellas disciplinarias, la Regla 14 de nuestro Reglamento, 4 L.P.R.A. Ap. XXI-A, dispone que le corresponde a un Comisionado Especial, designado por el propio Tribunal, celebrar una vista para recibir la prueba. Como hemos expresado reiteradamente, sus determinaciones fácticas merecen nuestra mayor deferencia. In re Torres Viñals, supra. Aunque este Tribunal no está obligado a aceptar el informe del Comisionado Especial nombrado para atender una querella contra un abogado, de ordinario hemos sostenido las conclusiones de hecho realizadas por dicho funcionario. Íd.; In re Gordon Menéndez I, 171 D.P.R. 442 (2007).

A base de lo anterior, hemos expresado que, cuando no hemos encontrado que un Comisionado Especial haya incurrido en error, no habremos de intervenir con sus determinaciones de hechos y recomendaciones, ausente de una demostración de pasión, prejuicio, parcialidad o error manifiesto en su apreciación. In re Irisarri Castro, 172 D.P.R. 193, 215 (2007); In re Rodríguez Feliciano, 165 D.P.R. 565, 579 (2005). Asimismo, es norma reiterada en nuestro ordenamiento ético disciplinario que para imponer sanciones disciplinarias tiene que haber prueba clara, robusta y convincente de que hubo violaciones éticas. In re Caratini Alvarado, 153 D.P.R. 575, 585 (2001).

Por su parte, el Canon 12 del Código de Ética Profesional, *supra*, dispone:

> Es deber del abogado hacia el tribunal, sus compañeros, las partes y testigos el ser puntual en su asistencia y conciso y exacto en el trámite y presentación de las causas. Ello implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución. Sólo debe solicitar la suspensión de vista cuando existan razones poderosas y sea indispensable para la protección de los derechos sustanciales de su cliente. Íd.

Hemos expresado que esta obligación de ser puntual en el trámite del litigio y desplegar todas las diligencias necesarias frente al tribunal ha de cumplirse por el abogado durante todas las etapas del litigio. In re Rodríguez Villalba, 160 D.P.R. 774 (2003); In re Pagán Hernández, 141 D.P.R. 113, 118 (1996). Un abogado que deja de comparecer injustificadamente ante los tribunales, dilatando así la tramitación de las causas, viola el Canon 12. In re Vilchez López, 170 D.P.R. 780, 800 (2007); In re Soto Colón, 155 D.P.R. 623 (2001).

De otra parte, el Canon 18 del Código de Ética Profesional, *supra*, dispone, en lo pertinente, que:

> Será impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.

> Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable. Íd.

A la luz de este deber frente al cliente, hemos resuelto que es impropio de un abogado asumir una representación profesional cuando sea consciente de que no puede rendir una labor idónea o que no puede prepararse adecuadamente, sin que ello conlleve gastos o demoras irrazonables a su cliente o a los foros donde practique. In re Marini Román, 165 D.P.R. 801 (2005); In re Guadalupe, Colón, 155 D.P.R. 135, 153 (2001). Asimismo, un patrón de falta de adecuacidad en el trámite judicial o de indiferencia a los requerimientos que ha hecho un tribunal, constituye una violación del Canon 18. In re Marini Román, *supra*.

En el pasado, hemos sido cuidadosos en la diferenciación entre los deberes de diligencia impuestos por los Cánones 12 y 18, *supra*. El Profesor Steidel sostiene que la diferencia recae en que el deber de diligencia que impone el Canon 12, *supra*, se refiere al deber de actuar *oportunamente* a favor de un cliente o respecto a órdenes del tribunal. El deber de competencia, por su parte, puede delimitarse al deber de *poseer los conocimientos* jurídicos necesarios para la tramitación adecuada de un caso o gestión profesional. S. Steidel Figueroa, Ética y Responsabilidad Disciplinaria del Abogado, 1ra ed., San Juan, Publicaciones J.T.S., 2010, pág. 188.

Asimismo, hemos expresado que un abogado que actúa negligentemente, de manera que conlleve la desestimación o el archivo de un caso, viola el Canon 18. In re Hoffman Mouriño, 170 D.P.R. 968, 981 (2007); In re Guadalupe, Colón, *supra*. Además, un abogado no queda relevado de actuar diligentemente

en la tramitación de un caso, aun cuando no cuente con la colaboración de su cliente. En In re Pinto Andino, 156 D.P.R. 259 (2002), expresamos que el abogado que pierde comunicación con su cliente debe, como gestión inicial, realizar esfuerzos razonables para lograr comunicarse con él y advertirle del riesgo que corre en la tramitación de su causa. Íd. Además, señalamos que un abogado que opta por presentar acciones ante el tribunal en representación de un cliente con el que ha perdido comunicación no incurre en una violación ética. Sin embargo, no debe cruzarse de brazos y dejar de informar al tribunal el hecho de que ha perdido comunicación con su cliente. Íd. Debe, por el contrario, mantener informado al tribunal y solicitar oportunamente ser relevado de la representación legal. Íd. Véanse, también: In re Cruz Tolinche, 112 D.P.R. 699 (1982); Hefler Const. v. Tribunal Superior, 103 D.P.R 844, 846 (1975).

Por otro lado, el Canon 19, *supra*, que regula el deber de mantener informado al cliente, dispone:

> El abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado. Siempre que la controversia sea susceptible de un arreglo o transacción razonable debe aconsejar al cliente el evitar o terminar el litigio, y es deber del abogado notificar a su cliente de cualquier oferta de transacción hecha por la otra parte.
>
> El abogado que representa varios clientes con intereses comunes o relacionados entre sí no debe transigir ninguno de los casos envueltos sin que cada cliente esté enterado de dicha transacción y sus posibles consecuencias.

Así las cosas, hemos expresado que el deber ineludible de mantener informado al cliente de todo asunto importante

que surge durante la tramitación de una causa, según dispuesto en el Canon 19, es un elemento imprescindible en la relación fiduciaria que existe entre el abogado y el cliente. In re García Muñoz, 170 D.P.R. 780 (2007). Por ello, no puede haber información más importante para un cliente que conocer de un dictamen adverso dictado en su contra. Íd.

En In re Castro Colón, res. el 22 de octubre de 2009, 2010 T.S.P.R. 23, una clienta alegó que su abogado no le informó de una sentencia final que dictó el Tribunal de Primera Instancia ni de una orden para ejecutar la misma. Allí, una vez más, enfatizamos que tanto el desempeño profesional competente y diligente y la información al cliente son dos elementos imprescindibles de toda relación abogado cliente. Por ello, reiteramos que los casos pertenecen a los clientes y ellos tienen derecho a estar informados de todos los trámites importantes que sucedan. No cumplir con ese deber conlleva una clara violación al Canon 19 la cual es independiente al deber de diligencia impuesto por el Canon 18. Íd.; In re Rivera Lozada, 176 D.P.R. 215, 225 (2009); In re Colón Morera, 172 D.P.R. 49 (2007).

De otra parte, hemos aclarado que el deber de informar continuamente establecido en el Canon 19, *supra*, es del abogado para con el cliente, mas no del cliente para con el abogado. Por ello, todo abogado debe actuar proactivamente y asegurarse de tener actualizada la información de contacto de su cliente, de modo que siempre pueda mantenerlo informado de todo lo que está pasando en su pleito. Esto, como dijimos en In re Castro Colón, *supra*, no es distinto a nuestras

expresiones en J.R.T. v. Marex Const. Co., Inc., 103 D.P.R. 135, 141 (1974), caso en que recalcamos que también existe un deber implícito de las partes, los abogados y de cualquier otra persona que participe en determinada controversia, de mantener y dar constancia de su paradero de manera que las partes, con su dejadez, no actúen en detrimento del proceso judicial del cual participan.

Asimismo, recientemente atendimos otro caso relevante a la controversia que hoy nos atañe. En In re Nieves Nieves, res. 7 de marzo de 2011, 2011 T.S.P.R. 33, se alegó que el allí querellado no presentó escrito alguno ante el Tribunal de Primera Instancia para defender los intereses de su cliente ni para cumplir con las órdenes de ese foro. Su cliente también adujo que no se le había mantenido informado del caso y que no fue notificado del trámite procesal ni de su eventual desestimación. Así las cosas, resolvimos que el abogado había violado el Canon 12 por no haber mostrado diligencia en la tramitación del caso, al no comparecer a una vista, incurrir en dilaciones indebidas e incumplir con órdenes del Tribunal de Primera Instancia.

En cuanto a una posible violación del Canon 19, sostuvimos que la actuación de un abogado de mantener ajeno a su cliente de las incidencias de sus casos constituye una lesión ética. Íd. De igual manera, expresamos que el Canon 19 le impone un deber de comunicación al abogado y no al cliente. Íd. Es decir, el abogado que no informa al cliente los asuntos importantes del caso no queda eximido de su responsabilidad por el hecho de que el cliente se tornó

inaccesible. En ese caso es necesario que el abogado indique las gestiones que realizó para comunicarse con su cliente. Como allí el abogado admitió que le notificó a su cliente sobre la desestimación del caso cuatro años después que se dictó sentencia, resolvimos que había violado el referido canon. Íd.

Sobre la información que un abogado viene obligado a comunicarle a su cliente, el Profesor Steidel nos expresa que:

> Parece lógico pensar que el deber de informar de un abogado se extiende, al menos, a toda aquella información sobre gestiones o asuntos que: (1) afecten o prolonguen la continuidad del pleito; (2) de ser conocidos por un cliente, pudiera razonablemente llevarlo a finalizar el pleito; (3) aumente los costos del litigio; (4) impliquen una renuncia de derechos o de garantías procesales; o (5) tienen el potencial de exponerlo a consecuencias adversas ante terceros que no forman parte del pleito. Steidel Figueroa, op. cit., en la pág. 191.

Por su parte, el Center for Professional Responsibility del American Bar Association ha propuesto la Regla Modelo 1.4, que regula las comunicaciones entre abogado-cliente para fines de mantener al cliente informado. Dicha regla dispone:

> (a)  A lawyer shall:
>
> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
>
> (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
>
> (3) keep the client reasonably informed about the status of the matter;
>
> (4) promptly comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation. Center for Professional Responsibility, American Bar Association, Model Rule of Professional Conduct, Rule 1.4 (2010).

Como puede apreciarse, la Regla 1.4 no dispone expresamente la manera en que debe atenderse la comunicación a través de un intermediario. Varios estados han resuelto esa controversia imponiendo un deber al abogado de asegurarse que la comunicación que se le transmite al intermediario, con miras a llevársele al cliente, en efecto sea recibida por este último. "A lawyer who communicates with a client through intermediaries -such as the lawyer´s employees or an individual designated by the client- remains responsible for ensuring that the client is provided with the information required under Rule 1.4." American Bar Association, ABA/BNA Lawyer´s Manual on Professional Conduct, Sec. 31:504 (supl. 2008); People v. Rivers, 933 P.2d 6 (Colo. 1997); In re Dreier, 671 A.2d 455 (D.C. 1996) (If a lawyer and client communicate through an agent of the client, the lawyer may still have a duty to communicate directly with the client regarding matters that significantly impact the representation.)

Por su parte, la Regla modelo 1.13, "Organization as Client", que regula los deberes de un abogado que ha sido contratado para representar a diferentes entidades que

agrupan personas, también ha sido aplicada para reglamentar la representación de personas que se agrupan o se agregan sin constituir una entidad legal específica independiente. American Bar Association, Annotated Model Rules, Rule 1.13 (5ta. Ed 2007) ("Some courts consider an unincorporated association, a limited partnership, a joint venture, or similar organization to be an aggregate of individuals, rather than an entity. In such cases, the lawyer-client relationship is between the group´s lawyer and each member individually.") Véase: City of Kalamazoo v. Michigan Disposal Serv., 151 F. Supp. 2d 913 (W.D. Mich. 2001).

Por último, es importante recalcar que, al momento de ponderar la sanción disciplinaria que habrá de imponérsele a un abogado, debemos tomar en cuenta la buena reputación del abogado en la comunidad; el historial previo de éste; si ésta constituye su primera falta y si ninguna parte ha resultado perjudicada; la aceptación de la falta y su sincero arrepentimiento; si se trata de una conducta aislada; el ánimo de lucro que medió en su actuación; resarcimiento al cliente, y cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien a tenor con los hechos. In re Quiñones Ayala, 146 D.P.R. 138, 147 (2005); In re Montalvo Guzmán, 164 D.P.R. 806 (2005).

III.

A la luz de los fundamentos antes expuestos, concluimos que no existe razón para intervenir con las conclusiones del informe de la Comisionada Especial y, por ende, acogemos sus recomendaciones. Asimismo, no encontramos prueba clara,

robusta y convincente de la comisión de faltas éticas en violación de los Cánones 18 y 19 del Código de Ética Profesional, *supra*. Esto, pues, según la prueba recibida, los querellados presentaron la acción para la cual habían sido contratados, ofrecieron orientación y coordinaron con sus clientes para recibir la información y los fondos necesarios para el litigio y comparecieron en múltiples ocasiones, aun cuando sus clientes no cooperaron con lo requerido. Asimismo, tomamos con particular interés el hecho de que los abogados pudieran representar efectivamente a varios de los codemandantes, incluyendo miembros del Comité de Comunicación, y de ofrecerles consultoría legal gratuita a familiares de éstos sin que estas gestiones redundaran en un mal servicio o desatención del punto de vista de los clientes. Por el contrario, la prueba demostró que al menos una de esas gestiones resultó en una compensación para una de las codemandantes.

Coincidimos con la Comisionada Especial en que resulta difícil entender que unos abogados puedan representar a estos clientes satisfactoriamente durante el proceso del pleito para el cual fueron contratados mientras, supuestamente, no informaban a éstos sobre los detalles del caso de daños y se mantenían incomunicados. De igual forma, coincidimos con la Comisionada Especial en que las dos cartas dirigidas a los clientes que obran en autos contradicen las alegaciones de la Oficina de la Procuradora General en cuanto a que los clientes no fueron informados sobre los asuntos importantes de su caso, en particular, cuando el caso fue desestimado y

cuando le requirieron por escrito la cooperación con el descubrimiento de prueba y el dinero para cubrir los gastos de los peritos. También tomamos con particular énfasis el hecho de que una de las codemandantes retuviera para sí el dinero provisto por algunos clientes para contratar a los peritos. Los codemandantes habían sido orientados, como refleja el propio contrato de servicios profesionales, sobre la importancia de la contratación de peritos. Por estas razones, no encontramos base suficiente para diferir de la Comisionada Especial en torno a que los querellados no violaron los Cánones 18 y 19, *supra*.

No obstante, nos parece ineludible clarificar que este tipo de práctica en que los clientes voluntariamente crean un Comité de Comunicación o establecen intermediarios frente a sus abogados, **no releva a los abogados de descargar su deber de mantener informados a cada uno de los clientes directamente, asegurándose de que la información llega a estos.**

Por otro lado, estamos de acuerdo con que los querellados debieron mantener informado al Tribunal de Primera Instancia de las dificultades que enfrentaban para lograr la cooperación oportuna de parte de sus clientes. Al no hacerlo, incumplieron con términos dispuestos para completar el descubrimiento de prueba, lo que, eventualmente, desembocó en la desestimación de la demanda. Los querellados debieron solicitar el relevo de la representación legal ante esas circunstancias. Por ello, como bien señala el informe de la

Comisionada Especial, incumplieron con el deber que impone el Canon 12, *supra*.

En vista de que este es el primer incidente disciplinario de ambos abogados, adoptamos las recomendaciones de la Comisionada Especial y procedemos a amonestarlos por incumplir su deber de mantener informado al foro primario conforme al Canon 12 del Código de Ética Profesional. Asimismo, les advertimos que, en el cumplimiento de sus deberes ante los tribunales a quienes sirven, deben mantener al foro enterado de cualquier incidente que dificulte la tramitación adecuada y oportuna de los trabajos.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re:     Daniel Muñoz Fernós
           Miguel Morell Chardón

                    CP-2009-005



                      SENTENCIA

    En San Juan, Puerto Rico, a 6 de septiembre de 2011.

    Por los fundamentos expuestos en la Opinión Per
Curiam que antecede, la cual se hace formar parte de
la presente Sentencia, adoptamos las recomendaciones
de la Comisionada Especial y procedemos a amonestar
al Lcdo. Daniel Muñoz Fernós y al Lcdo. Miguel
Morell Chardón por incumplir su deber de mantener
informado al foro primario conforme al Canon 12 del
Código de Ética Profesional.

    Asimismo, les advertimos que, en el cumplimiento
de sus deberes ante los tribunales a quienes sirven,
deben mantener al foro enterado de cualquier
incidente que dificulte la tramitación adecuada y
oportuna de los trabajos.

    Así lo pronunció, manda el Tribunal y certifica
la Secretaria del Tribunal Supremo. La Juez Asociada
señora Rodríguez Rodríguez no intervino.




                    Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo