Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL XI

| | | |
|---|---|---|
| OFICINA DE ÉTICA GUBERNAMENTAL<br><br>Recurrida<br><br>V.<br><br>JUAN L. RODRÍGUEZ REYES<br><br>Recurrente | KLRA202300022 | *Revisión de Decisión Administrativa* procedente de la Oficina de Ética Gubernamental<br><br>Caso Núm.: 22-54<br><br>Sobre: Violación al inciso (d) del Artículo 4.3 de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley Núm. 1-2012, según enmendada |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 27 de abril de 2023.

Comparece ante nos el señor Juan Luis Rodríguez Reyes (en adelante, el recurrente) y nos solicita que revisemos la Resolución emitida el 12 de diciembre de 2022 y notificada al día siguiente, por la Oficina de Ética Gubernamental (en adelante, OEG o parte recurrida), mediante la cual se determinó que este había violado lo dispuesto en el Artículo 4.3(d) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico;[1] (en adelante, Ley 1-2012), según enmendada, y se le impuso una multa administrativa por $5,000.00.

Adelantamos que, por los fundamentos que exponemos a continuación, se confirma la determinación impugnada.

---

[1] Ley 1 de 3 de enero de 2012; Ley 1-2012, según enmendada, 3 LPRA sec. 1857b(d).

Número Identificador

SEN2023 _____

**I**

Los eventos procesales y fácticos del caso ante nos, son los que a continuación se esbozan.

El recurso que nos ocupa tiene su génesis en una Querella instada el 10 de diciembre de 2021, por la OEG en contra del señor Juan L. Rodríguez Reyes, al amparo de la Ley 1- 2012, *supra*; la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (en adelante, LPAUG o Ley 38-2017);[2] y del Reglamento sobre Asuntos Programáticos de la Oficina de Ética Gubernamental de Puerto Rico.[3]

Conforme surge del expediente ante nuestra consideración, desde el 16 de enero de 2021 hasta el presente, el recurrente es un servidor público y ha ocupado el puesto de Administrador de la Administración para el Desarrollo de Empresas Agropecuarias (en adelante, ADEA) Entre las funciones de su puesto como Administrador, el recurrente es la autoridad nominadora de la ADEA y tiene la facultad de otorgar contratos.

La señora Anaishka S. Legrand Muñoz comenzó a laborar para la ADEA en marzo de 2017, adscrita a la Oficina de Sistemas de Información de dicha agencia. El señor Michael Silva Vega, por su parte, es contratista de la ADEA, también adscrito a la Oficina de Sistemas de Información, desde abril de 2018. Cabe señalar que, la señora Anaishka S. Legrand Muñoz y el señor Michael Silva Vega están legalmente casados desde el 4 de enero de 2019, por lo que, son parientes según lo define el Art. 1.2(y) de la Ley 1-2012.

El **1 de julio de 2021**, el señor Silva Vega fue contratado por la ADEA mediante el contrato Núm. 2022-000010, por la cantidad máxima de $10,000.00. La vigencia del aludido contrato sería desde la fecha de su otorgamiento hasta el 30 de junio de 2022.

---

[2] Ley 38 del 30 de junio de 2017, según enmendada, 3LPRA secs. 9671-9672.
[3] Reglamento Núm. 8231, aprobado el 18 de julio de 2012.

A solicitud de la señora Legrand Muñoz, el **21 de agosto de 2021**, se canceló su contrato de Servicios Profesionales con la ADEA. Subsiguientemente, el **23 de agosto de 2021**, la señora Legrand Muñoz fue nombrada en un puesto de confianza como Oficial Principal de Informática de la ADEA, adscrita a la Oficina de Sistemas de Información de dicha agencia, el cual actualmente ocupa, convirtiéndose así, en servidora pública.

Desde el **23 de junio de 2021**, la ADEA había solicitado autorización a la Oficina de Gerencia y Presupuesto (en adelante, OGP) y a la Oficina de la Secretaría de la Gobernación, para contratar al señor Michael Silva Vega, para rendir los servicios de consultoría en informática y tareas afines, a la Oficina de Sistemas de Información, ello, por la cantidad de $36,120.00. La vigencia del aludido contrato sería desde la fecha de su otorgamiento hasta el 30 de junio de 2022.

El **30 de julio de 2021**, la OGP aprobó la solicitud de autorización presentada por la ADEA para la contratación del señor Silva Vega por la cantidad de $36,120.00, la cual como mencionamos, había sido previamente peticionada por la ADEA el 23 de junio de 2021.

El **27 de agosto de 2021**, el recurrente, en representación de la ADEA, otorgó con el señor Silva Vega el **contrato Núm. 2022-000010A**, intitulado *Enmienda Contrato de Servicios Profesionales,* a los fines de aumentar hasta un máximo de $36,120.00, por el término del contrato, la cuantía establecida previamente en la cláusula "Cuarta" del Contrato Núm. 2022-000010. *La aludida contratación se efectuó sin contar con la previa autorización de la OEG.*

Conforme surge de las determinaciones de hechos esbozadas en el Informe de la Oficial Examinadora y acogidas por la OEG en la *Resolución* impugnada, el 21 de septiembre de 2021, se recibió en el

Área de Asesoramiento Jurídico y Litigación (en adelante, AAJL) de la OEG, una *Solicitud de Inhibición de Anaishka Suhaily Legrand Muñoz*, de 26 de agosto de 2021, dirigida al recurrente. En esta, la señora Legrand Muñoz, como Oficial Principal de Informática de la ADEA, hizo constar su inhibición sobre los asuntos de su esposo, el señor Silva Vega.

Mediante comunicación de 28 de septiembre de 2021, el señor Luis A. Pérez Vargas, Director Ejecutivo de la OEG, indicó que el documento de inhibición de la señora Legrand Muñoz cumplía con los parámetros establecidos por la OEG y que dicho documento pasaría a formar parte del *Registro de Mecanismos de Inhibición.* Asimismo, hizo constar en dicha comunicación, que se había percatado de la enmienda al contrato del señor Silva Vega, esposo de la señora Legrand Muñoz, otorgada el 27 de agosto de 2021, y que no se solicitó la autorización de la OEG para ello. Por consiguiente, advirtió al querellado que, mientras la señora Legrand Muñoz ocupara el puesto de Oficial Principal de Informática, la ADEA tenía que presentar una solicitud de autorización ante la OEG, ello, con anterioridad a realizar cualquier enmienda al contrato del señor Silva Vega o renovar el mismo, debido al parentesco entre estos.

Ante dicho escenario, el señor Pérez Vargas refirió el asunto al Área de Investigaciones y Procesamiento Administrativo (en adelante, AIPA) de la OEG para el trámite correspondiente. El 29 de septiembre de 2021, el AAJL de la OEG también refirió al AIPA el asunto. Consecuentemente, la OEG presentó una *Querella* en contra del señor recurrente Rodríguez Reyes, alegando, en esencia, que este, como Administrador de la ADEA, contrató al esposo de una servidora pública de dicha agencia sin haber solicitado autorización previa de la OEG. Le imputó haber violado el artículo 4.3(d)2 de la

Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley Núm.1-2012, *supra.*

En atención a la referida Querella, el 28 de diciembre de 2022, el recurrente presentó *Contestación a la Querella y Solicitud de Desestimación*. En síntesis, señaló que, no se requería la autorización previa de la OEG para la contratación aludida. Arguyó que, al momento de la contratación original, los esposos no eran servidores públicos de la ADEA, sino contratistas independientes. Por tal razón, solicitó la desestimación de la Querella.

Subsiguientemente, el 3 de febrero de 2022, la OEG presentó *Oposición a Solicitud de Desestimación*, en la que argumentó que el querellado cometió la infracción al citado artículo cuando firmó una enmienda al contrato original del esposo de una de las empleadas de ADEA, luego de que esta fuera nombrada en dicha agencia, sin la previa autorización de la OEG. Sostuvo que, la enmienda al mencionado convenio conllevó un aumento en la cuantía original, lo que constituyó un nuevo acuerdo de voluntades que tiene que cumplir con la misma rigurosidad de cualquier contratación gubernamental.

El 14 de febrero de 2022, el recurrente presentó una *Breve Réplica a "Oposición de Solicitud de Desestimación Radicado por la Querellante"*. En su réplica, reiteró su postura y añadió que, el contrato original fue preparado con la intención de otorgarse con una cuantía mayor, según surge de las cláusulas del contrato original y la solicitud de autorización que presentó la ADEA ante la OGP y que el contratista no se benefició de dicha enmienda.

Por otro lado, el 11 de mayo de 2022, la OEG presentó una *Solicitud de Resolución Sumaria* argumentando que la aludida controversia podía resolverse sin la necesidad de una vista, toda vez que, los hechos del caso están libres de controversias materiales.

El 25 de mayo de 2022, la entonces designada Oficial Examinadora, la Lcda. Lourdes R. Vázquez Vargas, emitió *Orden* denegando la petición instada por la OEG. Por su parte, el 9 de junio de 2022, el recurrente presentó su *Oposición a "Solicitud de Resolución Sumaria" que radicara la OEG.* El 22 de junio de 2022, la OEG presentó su *Réplica a "Oposición a Solicitud Sumaria que Radicara la OEG".*

Con el beneficio de la comparecencia de ambas partes, el 12 de diciembre de 2022, la OEG emitió una *Resolución,* que fue notificada al día siguiente. En la misma, la OEG adoptó en su totalidad el Informe de la Oficial Examinadora sometido el 15 de noviembre de 2022, y lo hizo formar parte de la referida *Resolución.* En su dictamen, la OEG encontró al recurrente incurso en violación al inciso (d) del Artículo 4.3 de la Ley de Ética Gubernamental, *supra.* En consecuencia, le impuso una multa de $5,000.

Inconforme, el 21 de diciembre de 2022, el recurrente presentó una *Solicitud de Reconsideración.* Posteriormente, el 28 de diciembre de 2022, mediante *Resolución en Reconsideración,* la OEG sostuvo lo resuelto en su *Resolución* del 12 de diciembre de 2022. Aún insatisfecho, el 17 de enero de 2023, el recurrente compareció ante este foro revisor mediante *Revisión Administrativa,* e hizo los siguientes señalamientos de error:

1. Erró la Oficina de Ética Gubernamental al acoger el Informe de la Oficial Examinadora cuando esta erró al interpretar que el querellado-recurrente violentó las disposiciones del artículo 4.3 (d) de la Ley de Ética Gubernamental cuando ella interpretó erradamente que la enmienda al contrato 2022-000010A del Sr. Michael Silva Vega, adicionando la cantidad de $26,120.00 que había sido aprobada previo al nombramiento de la Sra. Anaishka S. Legrand Muñoz, como empleada de la Agencia, constituía la otorgación de un nuevo contrato y, por lo tanto, violaba el referido artículo ya que no medió consulta previa a la OEG para firmar la referida enmienda del contrato mediante la cual se adicionaba la cantidad mencionada.

2. Erró la Oficina de Ética Gubernamental al acoger el informe de la Oficial Examinadora y esta erró al no aplicar lo resuelto en el caso *OEG v. Manuel B. Martínez Giraud*, 2022 TSPR 93 en cuanto al estándar probatorio a ser utilizado cuando se le impute a un funcionario público haber violentado la Ley de Ética Gubernamental.

3. Erró la Oficina de Ética Gubernamental al no notificar la designación de la Lcda. Michelle Marie Vélez Berríos como Oficial Examinadora, antes de resolver el asunto de epígrafe, privándole del debido proceso de ley sustantivo como procesal al querellado-recurrente de su derecho de poder solicitar la inhibición o descalificación de la Oficial Examinadora debido a que esta ha sido la representante legal de la OEG ante los Tribunales de Puerto Rico tan recientemente como en el caso de *OEG v. Manuel B. Martínez Giraud*, 2022 TSPR 93 del 7 de julio de 2022.

4. Erró la Oficina de Ética Gubernamental al acoger el informe de la Oficial Examinadora cuando esta erró abusando de su discreción al no celebrar una vista presencial para que la parte querellada-recurrente pudiese presentar prueba testifical para exponer sus razones que lo llevaron a firmar la enmienda para adicionar la cuantía de dinero previamente aprobada, y así demostrar que no hubo intención de violar el estatuto privándole así de unas garantías mínimas a un debido proceso de ley, tanto al aspecto sustantivo como procesal de su derecho.

El 19 de enero de 2023, emitimos una *Resolución* en la que le concedimos a la parte recurrida hasta el 16 de febrero de 2023 para presentar su alegato en oposición. En cumplimiento con lo ordenado, el 13 de febrero de 2023, compareció ante nos la OEG mediante *Alegato en Oposición de la Parte Recurrida.*

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver el recurso ante nuestra consideración.

En adelante, esbozamos el derecho que gobierna las controversias planteadas ante este foro revisor.

**II**

### A. Contratación Gubernamental

Es normativa reiterada que, las obligaciones nacen de la ley, de los contratos y cuasicontratos, de los actos ilícitos, u omisiones en que interviene culpa o negligencia, y cualquier otro acto idóneo

para producirlas. Art. 1042 del Código Civil, 31 LPRA ant. sec. 2992; *Payano v. Cruz*, 2022 TSPR 78 (2022); *NHIC et al. v. García Passalacqua et al.*, 206 DPR 105 (2021). Los contratos se perfeccionan cuando median el objeto, consentimiento y causa. Art. 1213 del Código Civil, 31 LPRA ant. sec. 3391. El contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa o prestar algún servicio. Art. 1206 del Código Civil, 31 LPRA ant. sec. 3371; *Aponte Valentín et al. v. Pfizer Pharm., LLC*, 208 DPR ___ (2021). En nuestro ordenamiento jurídico se ha reconocido el principio de libertad de contratación, el cual permite a las partes pactar los términos y condiciones que tengan por convenientes. *Pérez Rodríguez v. López Rodríguez*, 2022 TSPR (2022); *Burgos López et al. v. Condado Plaza*, 193 DPR 1, 7-8 (2015); *Arthur Young & Co. V. Vega III*, 136 DPR 157 (1994). No obstante, tal libertad no es infinita, puesto que, encuentra su límite en el Art. 1207 del Código Civil, 31 LPRA sec. 3372. El referido artículo dispone que, los términos y condiciones que las partes establezcan serán válidas cuando no sean contrarias a la ley, la moral, ni al orden público. 31 LPRA sec. 3372; *Burgos López et al. v. Condado Plaza*, supra, págs. 7-8; *Oriental Bank v. Perapi*, 192 DPR 7, 15 (2014). Una vez perfeccionado el contrato, lo acordado tiene fuerza de ley entre las partes, "y desde entonces obligan, no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conforme a la buena fe, al uso y a la ley". Art. 1210 del Código Civil, 31 LPRA ant. sec. 3375; *Aponte Valentín et al. v. Pfizer Pharm.,* supra; *Payano v. Cruz,* supra; *Burgos López et al. v. Condado Plaza*, supra, pág. 8.

En lo pertinente a la contratación gubernamental, [l]a Constitución de Puerto Rico establece que "[so]lo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y

en todo caso por autoridad de ley". Art. VI, Sec. 9, Const. PR., LPRA, Tomo 1, ed. 2016, pág. 444. En virtud de este mandato constitucional, [nuestra Alta Curia ha] sido consecuente al exigir el manejo ético y apropiado de los fondos públicos. *Vicar Builders v. ELA et al.,* 192 DPR 256 (2015); *Rodríguez Ramos et al. v. ELA et al.,* 190 DPR 448 (2014); *Jaap Corp. v. Depto. Estado et al.,* 187 DPR 730 (2013). Ello, en miras de que "[l]a buena administración de un gobierno es una virtud de democracia, y parte de una buena administración implica llevar a cabo sus funciones como comprador con eficacia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa". *Génesis Security v. Depto. Trabajo,* 204 DPR 986, 997 (2020).

A esos fines, la Asamblea Legislativa ha desarrollado un andamiaje de distintos estatutos que tienen como propósito garantizar el control fiscal y regular la contratación gubernamental. *Vicar Builders v. ELA et al.,* supra, pág. 262. De igual modo, [nuestro Tribunal Supremo] ha afinado los preceptos de una sana administración pública mediante nuestra jurisprudencia. *Jaap Corp. v. Depto. Estado et al.,* supra, pág. 741. En consecuencia, la facultad del Gobierno de Puerto Rico y de sus entidades para contratar y comprometer fondos públicos está limitada por estas normas.[4]

A la luz de lo anterior, [el Máximo Foro ha] determinado que todo contrato gubernamental debe cumplir con los requisitos siguientes: (1) reducirse a escrito; (2) mantener un registro que establezca su existencia; (3) remitir copia a la Oficina del Contralor de Puerto Rico, y (4) acreditar que se realizó y otorgó quince días antes. *ALCO Corp. v. Mun. de Toa Alta,* 183 DPR 530, 537 (2011); *Ocasio v. Alcalde Mun. de Maunabo,* 121 DPR 37, 54 (1988). Los

---

[4] *Id,* págs. 997-998.

contratos gubernamentales deben cumplir rigurosamente con cada una de estas exigencias, "ya que sirven como mecanismo de cotejo para perpetuar circunstancial y cronológicamente esos contratos y, así, evitar pagos y reclamaciones fraudulentas". *Vicar Builders v. ELA et al.,* supra, pág. 264.

De otra parte, como norma general, el Departamento de Hacienda de Puerto Rico (Departamento de Hacienda) tiene la responsabilidad de diseñar y administrar los sistemas de contabilidad y los procedimientos de pago e ingresos de las dependencias y entidades gubernamentales. *Ley de Contabilidad del Gobierno de Puerto Rico*, Ley Núm. 230 de 23 de julio de 1974, 3 LPRA sec. 283 *et seq.* En el ejercicio de estas funciones, el Gobierno de Puerto Rico preinterviene en todas las transacciones financieras de sus dependencias públicas, con el propósito de garantizar su exactitud, corrección, necesidad y legalidad. 3 LPRA sec. 283e.

Respecto a la contratación gubernamental, el Estado está obligado por imperativo constitucional a manejar los fondos públicos con los principios fiduciarios y éticos más altos. *Jaap Corp. v. Depto. Estado et al.,* 187 DPR 730, 739 (2013); *C.F.S.E. v. Unión de Médicos*, 170 DPR 443, 452 (2007).

Por otro lado, el Art. 2 de la Ley Núm. 237-2004, 3 LPRA sec. 8612, establece claramente que la contratación gubernamental de servicios profesionales debe ser la excepción y que solo se utilizará "cuando la entidad gubernamental no cuente [o] no pueda utilizar los recursos internos a ser contratados, o cuando el *expertise,* destreza o experiencia del contratista sea necesario para la consecución de los fines para lo cual es contratado". Este artículo también exige que, al momento de contratar los servicios de un contratista, el Estado tome en cuenta "la necesidad real de los

servicios a contratarse, la situación económica y el presupuesto de la entidad gubernamental contratante".[5]

Además de establecer que la contratación gubernamental de servicios profesionales debe ser excepcional, la Ley Núm. 237-2004 enumera en su Art. 3, una serie de requisitos, tanto de forma como sustantivos, con los cuales debe cumplir todo contrato entre el Estado y un contratista. 3 LPRA sec. 8613. En específico, este Artículo requiere:

(a) El otorgamiento de un contrato de servicios profesionales o consultivos entre un contratista y el Gobierno deberá ser prospectivo. Toda entidad gubernamental pagará únicamente por servicios rendidos.

(b) Debe formalizarse por escrito e incluirse en el texto del mismo la disposición legal que faculta a la entidad gubernamental a otorgar contratos. (Énfasis suplido). Íd.

El resto de los incisos de esta disposición legal detalla la información que debe contener el contrato sobre el contratista, los servicios que prestará, la vigencia del contrato, la cuantía máxima a pagarse y la forma de pago. *Íd.* Más adelante, el Art. 5 de la misma ley, 3 L.P.R.A. sec. 8615, requiere que se incluya en el contrato una lista extensa de cláusulas mandatorias.

Vemos, pues, que la Ley Núm. 237, *supra*, establece que todo contrato gubernamental de servicios profesionales o consultivos, categoría que incluye la prestación de servicios legales, solo será válido si se hace constar por escrito y tiene vigencia prospectiva. Sin lugar a dudas, la Ley Núm. 237, *supra*, prohíbe la contratación verbal y retroactiva de servicios profesionales y consultivos.[6]

Nuestro Alto Foro ha señalado que "[l]as distintas disposiciones estatutarias [que] regul[an] la realización de obras y contratación de servicios para el Estado y sus agencias e

---

[5] *Rodríguez Ramos, et als v. ELA et al*, supra, págs. 458-459.
[6] *Id,* pág. 459.

instrumentalidades tienen por meta la protección de los intereses y dineros del pueblo contra el dispendio, la prevaricación, el favoritismo y los riesgos del incumplimiento." *Ríos v. Municipio de Isabela*, 159 DPR 839 (2003); citando a *Cancel v. Municipio de San Juan*, 101 D.P.R. 296, 300 (1973).

### B. Ley de Ética Gubernamental

La Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, *supra*, fue creada con el objetivo principal de renovar y reafirmar la función preventiva y fiscalizadora de la Oficina de Ética Gubernamental.[7] Según se ha dispuesto, uno de los propósitos principales para la creación del precitado estatuto, fue promover y preservar la integridad de los servidores públicos y de las instituciones del gobierno.[8] La Oficina de Ética Gubernamental, "fiscaliza, mediante los mecanismos y los recursos que la ley le provee, la conducta de los servidores públicos y penaliza a todos aquellos que transgreden la normativa ética que integra los valores en el servicio público".[9] Dentro de su función preventiva, busca atacar y prevenir la corrupción del Gobierno, la conducta ilegal de los empleados públicos, los conflictos de intereses, el abuso de poder y el ejercicio de influencias indebidas.[10]

La *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, supra*, dispone que, la OEG "fiscaliza la conducta de los servidores públicos y penaliza a todos aquellos que transgreden la normativa ética que integra los valores del servicio público".[11] Ante ello, esta oficina adquiere jurisdicción sobre la conducta de los servidores de la Rama Ejecutiva.[12] Por consiguiente, tiene la

---

[7] Exposición de Motivos de la Ley Núm. 1-2012, *supra*, pág. 2.
[8] *OEG v. Martínez Giraud*, supra; *O.E.G. v. Rodríguez*, 159 DPR 98, 122 (2003).
[9] Exposición de Motivos de la Ley Núm. 1-2012, *supra*, pág. 2; Véase, *Pueblo v. Arlequín Vélez*, 204 DPR 117, 154 (2020).
[10] *OEG v. Rodríguez*, supra, págs. 122-12.
[11] *Íd.*
[12] 3 LPRA sec. 1857.

autoridad para sancionar a servidores públicos que actúen en contravención a la propia ley orgánica.[13]

A esos fines, se establece que para que se configure una infracción bajo la Ley Orgánica de la OEG es un requisito indispensable que la conducta objeto de la infracción haya sido ejecutada por un servidor público. Así las cosas, define a un **servidor público** como sigue:

> persona en el Gobierno que interviene en la formulación e implantación de la política pública o no, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También, incluye al contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades está la de intervenir directamente en la formulación e implantación de la política pública.[14]

El artículo 4.2 de la Ley de Ética Gubernamental establece una serie de prohibiciones éticas de carácter general. Textualmente, el inciso (s) del mencionado postulado dispone que, "[u]n servidor público no puede llevar a cabo una acción que ponga en duda la imparcialidad e integridad de la función gubernamental". En otras palabras, se penaliza la acción que pueda crear una percepción o apariencia de conducta impropia y deshonestidad en las funciones gubernamentales.

La Ley Núm. 1-2012, *supra*, define "servidor público" como aquella "[p]ersona en el Gobierno que interviene en la formulación e implantación de la política pública o no, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración".[15]

### C. Función adjudicativa de las agencias administrativas

En aras de fiscalizar la conducta de los servidores públicos y penalizar a todos los que transgredan normas éticas que envuelvan los valores en el servicio público, la OEG, al igual que otras agencias

---

[13] 3 LPRA 1857a - 1857e.
[14] 3 LPRA sec. 1854 (gg).
[15] Art. 1.2(gg) de la Ley Núm. 1-2012, 3 LPRA sec. 1854(gg); *OEG v. Martínez Giraud,* supra, pág. 12.

administrativas, lleva a cabo funciones adjudicativas consistentes en decidir casos y controversias aplicando a los hechos la normativa legal pertinente.[16] En ese sentido, este tipo de funciones representa una marcada semejanza con los procedimientos tradicionales utilizados por los tribunales de justicia para decidir los asuntos ante su consideración. *OEG v. Martínez Girod*, 2022 TSPR 93.

Es norma conocida que los procedimientos disciplinarios en el foro administrativo, generalmente, no se rigen por los mismos criterios probatorios que los casos criminales en los tribunales. De ordinario, el *quantum* de prueba necesario para prevalecer en el ámbito administrativo es el de preponderancia de la prueba.[17] Sin embargo, los procedimientos administrativos que suponen violaciones a disposiciones éticas deben ser atendidos a través de un crisol más riguroso. En comparación con los procedimientos éticos que aquí discutimos, las imputaciones al amparo de los Cánones de Ética Profesional,[18] requieren que la prueba sea aquilatada a la luz del estándar de prueba clara, robusta y convincente.[19]

En ese sentido, la prueba clara, robusta y convincente es un estándar intermedio de suficiencia de la prueba que, en esencia, es más exigente que el comúnmente aplicado estándar de preponderancia de la prueba en casos civiles, pero que, a su vez, es menos riguroso que la prueba establecida más allá de duda razonable. Si bien es cierto que el referido estándar no es susceptible de ser definido de forma precisa, [se ha] descrito la prueba clara, robusta y convincente como aquella evidencia que produce en un juzgador de hechos una convicción duradera de que las

---

[16] 3 LPRA secc. 1854 *et seq.*

[17] *Trib. Exam. Méd. v. Cañas Rivas*, 154 DPR 29, 36–37 (2001).

[18] 4 LPRA Ap. IX.

[19] Véanse*, In re Candelaria Rosa*, 197 DPR 445, 459 (2017) (*Per curiam*); *In re Quiñones Artau,* 193 DPR 356, 386 (2015) (*Per curiam*); *In re Muñoz, Morell*, 182 DPR 738, 750 (2011) (*Per curiam*).

contenciones fácticas son altamente probables.[20] Nótese, además, que aunque se trate de una mera apariencia, el cargo ético debe quedar establecido por prueba clara y convincente, **no afectada por reglas de exclusión <u>ni a base de conjeturas</u>**.[21]

Particularmente atinente al caso de marras, el Art. 4.3(d) de la Ley de Ética Gubernamental, *supra*, respecto a las prohibiciones relacionadas con otros empleos, contratos o negocios, dispone lo siguiente:

> (d) La autoridad nominadora no puede llevar a cabo un contrato en el que un servidor público de la agencia o un miembro de la unidad familiar, un pariente, un socio o una persona que comparta la residencia de este último tenga o haya tenido, directa o indirectamente, un interés pecuniario durante los últimos dos (2) años anteriores a su nombramiento. Esta prohibición no aplica cuando, a discreción de la Dirección Ejecutiva, medien circunstancias excepcionales que hayan sido evaluadas con anterioridad a que la autoridad nominadora contrate con el servidor público o con un miembro de la unidad familiar, un pariente, un socio o una persona que comparta la residencia de este último. […].[22]

En síntesis, para que se configure una violación al mencionado artículo, es necesario que concurran los siguientes requisitos: (1) que la autoridad nominadora; (2) lleve a cabo un contrato; (3) en el que el pariente de un servidor público de la agencia tenga o haya tenido, directa o indirectamente, un interés pecuniario y, (4) que no se haya obtenido la autorización de la Dirección Ejecutiva de la OEG, previo a otorgar el contrato.

Por otro lado, el artículo 1.2 de la Ley de Ética Gubernamental, *supra,* define los términos "autoridad nominadora", "contrato", "pariente" y "servidor público" del siguiente modo:

> (h) autoridad nominadora — aquel o aquellos cuya función inherente es la de nombrar, ascender, remunerar o contratar.

---

[20] Señala el Profesor Ernesto Chiesa, "[e]ste estándar se usa cuando está por el medio un derecho demasiado fundamental para permitir ser afectado por la sola preponderancia de la evidencia". E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas, Ediciones* SITUM, 2016, págs. 51–52.

[21] *OEG v. Martínez Giraud*, supra.

[22] 3 LPRA sec. 1857b.

[…]

(ñ) Contrato — convenio o negocio jurídico para hacer o dejar de hacer determinado acto, otorgado con el consentimiento de las partes contratantes, relacionado con un objeto cierto y por virtud de la causa que se establezca. Incluye, pero sin limitarse, los acuerdos de bienes, de obras, de servicios y las órdenes de compra y de servicios.

[…]

(y) Pariente — los abuelos, los padres, los hijos, los nietos, los tíos, los hermanos, los sobrinos, los primos hermanos, el cónyuge, los suegros y los cuñados del servidor público, así como los hijos y los nietos de su cónyuge.

[…]

(gg) Servidor público — persona en el Gobierno que interviene en la formulación e implantación de la política pública o no, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También, incluye al contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades está la de intervenir directamente en la formulación e implantación de la política pública.[23]

## C. El Debido Proceso de Ley

Tanto en nuestra Constitución como en la Constitución Federal se consagra el derecho fundamental al debido proceso de ley.[24] Dicho precepto constitucional establece que, "[n]inguna persona será privada de su libertad o propiedad sin el debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes".[25] El debido proceso de ley cuenta con dos vertientes: la procesal y la sustantiva. *Rivera Rodríguez & Co. v. Lee Stowell*, 133 DPR 881, 887 (1993). El debido proceso de ley, en su dimensión procesal, se refiere al "derecho de toda persona a tener un proceso justo y con todas las garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo". *Aut. Puertos v. HEO*, 186 DPR 417, 428 (2012). Cónsono con ello, se han reconocido las

---

[23] 3 LPRA sec. 1854.
[24] Véase, Const. P.R. Art. II, Sec. 7; Const. EE. UU., Emdas. V y XIV, Tomo I; *González Segarra et al. v. C.F.S.E.*, 188 DPR 252 (2013).
[25] *Íd.* Const. P.R. Art. II, Sec. 7.

siguientes garantías procesales, las cuales conforman el debido proceso de ley en su vertiente procesal: (1) la concesión de una vista previa; (2) una notificación oportuna y adecuada; (3) el derecho a ser oído; (4) el derecho a confrontarse con los testigos en su contra; (5) a presentar prueba oral y escrita a su favor; y (6) la presencia de un adjudicador imparcial. *Vendrell López v. AEE*, 199 DPR 352 (2017) (Sentencia). Las garantías procesales del debido proceso de ley se han extendido a los procesos administrativos. *Íd.* pág. 359. Sin embargo, en el derecho administrativo el debido proceso de ley no tiene la misma rigidez que en los procedimientos penales. *Báez Díaz v. E.L.A.*, 179 DPR 605, 693 (2010).

Cónsono con la Ley Núm. 38 de 30 de junio de 2017, conocida como la LPAU se dispone que, el derecho que tienen las personas a ser oídas, antes de ser despojadas de algún interés protegido, es un requisito fundamental del debido proceso.[26] Por lo tanto, el privar de la libertad o propiedad a una persona sin proveer la oportunidad de ser oído es contrario al debido proceso.[27]

El Tribunal Supremo, ha expresado en varias ocasiones, el principio de que el debido proceso de ley ofrece protección contra la arbitrariedad administrativa, pero en modo alguno es "molde rígido que prive de flexibilidad" a los organismos administrativos. *Henríquez v. Consejo de Educación Superior*, 120 DPR 194, 202 (1987); *Rodríguez v. Tribunal Superior*, 104 DPR 335, 340 (1975).

Los procesos adjudicativos administrativos, conforme establece el debido proceso de ley, deben ser llevados a cabo de manera imparcial. Ello constituye la esencia del debido proceso.[28] En *Com. Seg. v. Real Legacy Assurance*, 179 DPR 692 (2010), el Tribunal Supremo de Puerto Rico catalogó el derecho a un juicio

---

[26] Véase, *Rivera Rodríguez & Co. v. Lee Stowell,* supra, pág. 889.
[27] *Íd.*
[28] Véase, *Withrow v. Larkin,* 421 U.S. 35, 46-47 (1975).

imparcial como uno de los pilares del debido proceso de ley. En el mencionado caso, nuestro Máximo Foro Judicial además puntualizó que, la LPAU les confiere a los jefes de agencia la facultad de delegar su función de presidir las vistas adjudicativas administrativas.[29] La persona sobre quien recae esa función es seleccionada de acuerdo con su criterio personal. Cuando opta delegar la función de presidir la audiencia, pero retiene la facultad de adjudicar, se entiende que a quien designa es a un oficial examinador. *Tosado v. A.E.E.*, 165 DPR 377, 386 (2005). En esos términos, la Sec. 3.3 de la LPAU establece que, "[t]oda agencia podrá designar oficiales examinadores para presidir los procedimientos de adjudicación que se celebren en ella, los cuales no tendrán que ser necesariamente abogados, particularmente cuando el procedimiento en cuestión es uno informal".[30] Por su parte, la figura del oficial examinador tiene a su cargo la crucial tarea de adjudicar los hechos en controversia durante el transcurso de la vista evidenciaria. Su cargo le exige recopilar, de manera integral, la evidencia presentada en los procedimientos; esto es, es el responsable de la formación del expediente administrativo. Por ende, su importancia como partícipe en los procedimientos, pues debe asegurar que se desarrolle un expediente administrativo que presente adecuadamente la postura de las partes envueltas.[31]

Lo anterior, para que cuando el adjudicador examine el caso en sus méritos, pueda revisarlo completamente *de novo* sin dificultad alguna. Garantizándose así que el adjudicador final lo haga de manera independiente y objetiva, ateniéndose exclusivamente al expediente constituido mediante un proceso justo y libre de influencias.[32]

---

[29] 3 LPRA sec. 2153; *Com. Seg. v. Real Legacy Assurance, supra,* en la pág. 709.
[30] 3 LPRA sec. 2153.
[31] Véase, *Com. Seg. v. Real Legacy Assurance, supra,* en la pág. 710.
[32] *Íd.,* a las págs. 710-711.

Ahora bien, sabido es que la celebración de un litigio justo ante un juzgador imparcial es un derecho básico de todo individuo. Por ende, ante una alegación de parcialidad en un procedimiento administrativo, se debe determinar sobre cual asunto podría existir dicha parcialidad. Es por esto, por lo que las agencias y tribunales deben estar atentos ante alegaciones de parcialidad que se hagan respecto a un oficial examinador sobre aspectos de hechos del caso. *Íd.* Ello, pues cuando el oficial examinador ha prejuzgado cuestiones o hechos específicos del caso, podría dar lugar a su descalificación. En fin, para que prevalezca la alegación de parcialidad, a los efectos de descalificar a un oficial examinador, es necesario que se evidencie su compromiso previo para obtener determinada conclusión con relación a cuestiones específicas del caso. *Íd.* Específicamente, el oficial examinador debe haber incurrido en un comportamiento de un grado tan alto de favoritismo o antagonismo que hace imposible la solución justa del caso. (Citas omitidas). Aquel perjudicado, podrá solicitar la descalificación del funcionario que preside la vista cuando este se aparte de su función de juzgador de los hechos y actúe como acusador; cuando dirija los procedimientos de un modo que subvierta la integridad del proceso, o cuando se evidencia que ha prejuzgado cuestiones fácticas específicas.[33]

A tenor con lo anterior, nuestro Tribunal Supremo dispuso que, las meras alegaciones de parcialidad o perjuicio no son suficientes para sostener una alegación de violación al debido proceso de ley.[34] Después de todo, para rebatir la presunción de que los administradores que fungen como adjudicadores carecen de parcialidad, las alegaciones deben revelar un verdadero perjuicio o un interés pecuniario o institucional que los descalifique.[35]

---

[33] *Com. Seg. v. Real Legacy Assurance*, supra. a la págs. 715-716.
[34] Véase, *Henríquez Soto v. Consejo de Educación Superior*, 120 DPR 194, 210 (1987).
[35] *Íd.*

### D. Disposición sumaria en el ámbito administrativo

Los procedimientos adjudicativos de la OEG, conforme establece la Ley de Ética Gubernamental, se llevarán a cabo conforme a lo establecido en la LPAU.[36]

Como es sabido, nuestro más Alto Foro ha incorporado al ámbito administrativo normas aplicables a los litigios civiles. *Rodríguez Rivera v. Autoridad de Carreteras*, 110 DPR 184 (1980). En ese sentido, los principios que rigen la disposición sumaria de los casos, también le son de aplicación a los casos que se ventilan ante el foro administrativo.

En lo pertinente a las resoluciones emitidas sumariamente en los procesos adjudicativos administrativas, la sección 3.7(b) de la LPAU establece que:

> Si la agencia determina a solicitud de alguna de las partes y luego de analizar los documentos que acompañan la solicitud de orden o resolución sumaria y los documentos incluidos con la moción en oposición, así como aquellos que obren en el expediente de la agencia, que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias, ya sean de carácter final, o parcial resolviendo cualquier controversia entre las partes, que sean separable de las controversias, excepto en aquellos casos donde la ley orgánica de la agencia disponga lo contrario.
>
> La agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que (1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho no procede.

Así pues, en nuestro ordenamiento jurídico, el mecanismo de la sentencia sumaria está regido por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V., la cual desglosa los requisitos específicos con los que debe cumplir esta figura procesal. *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224 (2015). La

---

[36] Artículo 7.2 de la Ley de Ética Gubernamental.

sentencia sumaria es un mecanismo procesal para disponer de ciertos casos sin necesidad de llegar a la etapa del juicio. *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010). Al no haber controversia sustancial y real sobre hechos materiales, sólo falta aplicar el derecho pertinente a la controversia. Cuando se habla de hechos materiales nos referimos a aquellos que pueden determinar el resultado de la reclamación, en conformidad con el derecho sustantivo aplicable. Así pues, el propósito de la sentencia sumaria es facilitar la pronta, justa y económica solución de los casos que no presenten controversias genuinas de hechos materiales. *Velázquez Ortiz v. Gobierno Mun. De Humacao,* 197 DPR 656, 662-663 (2017).

Por otra parte, conforme a la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, procede dictar sentencia sumaria si las alegaciones, deposiciones, y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material y, además, si el derecho aplicable así lo justifica. *Lugo Montalvo v. Sol Meliá Vacation,* supra, pág. 225; *SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 430. Consecuentemente, se permite disponer de asuntos sin necesidad de celebrar un juicio, ya que únicamente resta aplicar el derecho a los hechos no controvertidos. *Roldán Flores v. M. Cuebas, Inc.,* 199 DPR 664 (2018). La parte promovente de la moción de sentencia sumaria viene obligada a desglosar los hechos sobre los que aduce que no existe controversia y, para cada uno, especificar la página o párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya. Regla 36.3 de Procedimiento Civil, *supra; Zapata-Rivera v. J.F. Montalvo,* supra, pág. 432. *Roldán Flores v. M. Cuebas, Inc.,* supra.

Por otro lado, la parte que se opone tiene el deber de hacer referencia a los párrafos enumerados por la parte promovente que

entiende que están en controversia y para cada uno, detallar la evidencia admisible que sostiene su impugnación. Es decir, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones. *Ramos Pérez v. Univisión*, supra, págs. 215-216. Las meras afirmaciones no bastan. *Id.* "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente". *Ramos Pérez v. Univisión*, supra, pág. 215. (Cita omitida). *Roldán Flores v. M. Cuebas, Inc.*, supra. Ahora bien, si el oponente no controvierte los hechos propuestos de la forma en la que lo exige la Regla 36.3 de Procedimiento Civil, *supra*, se podrán considerar como admitidos y se dictará la sentencia sumariamente en su contra, si procede. Regla 36.3 de Procedimiento Civil, *supra*. *Roldán Flores v. M. Cuebas, Inc.*, supra.

En lo que nos atañe, el Artículo 6.11 del Reglamento sobre Asuntos Programáticos de la Oficina de Ética Gubernamental, aprobado el 17 de julio de 2012, establece lo pertinente a resolución sumaria de los asuntos adjudicativos ante su consideración. El mencionado cuerpo reglamentario dispone lo siguiente:

> Cualquier parte podrá solicitar la resolución sumaria de todas o de cualquiera de las controversias a ser ventiladas en una audiencia mediante la presentación de una moción con no menos de veinte días calendario de antelación a dicha audiencia. La moción establecerá que no existe controversia de hecho esencial que haya que determinar en la audiencia y estará fundada en documentos, sin limitarse a: declaraciones juradas, certificaciones, grabaciones, videos o fotografías.

> Dentro del término de diez días calendario, a partir de la notificación de una moción de resolución sumaria, la parte que se oponga a dicha moción deberá presentar su oposición. En ésta, deberá establecer que existe una controversia real sobre algún hecho esencial a determinar en la audiencia o que la resolución sumaria es inapropiada por alguna otra razón.

No procederá dictar una resolución sumaria si: (1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho no procede.

Si todas las controversias se resuelven mediante una resolución sumaria, no se celebrará audiencia y el oficial examinador procederá a emitir su informe; o el juez administrativo procederá a emitir su resolución final. Si sólo se deciden algunas de las controversias, el oficial examinador emitirá un informe parcial sobre las controversias resueltas; o el juez administrativo emitirá una resolución parcial. La audiencia continuará respecto a las controversias no resueltas.

### E. Deferencia a los foros administrativos

Según es sabido, los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que, estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *OEG v. Martínez Giraud,* 2022 TSPR 93, 210 DPR ___ (2022); *Pérez López v. Depto. Corrección*, 208 DPR 656, 672 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *Asoc. Fcias. v. Caribe Specialty et al. II,* 179 DPR 923, 940 (2010). Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección, que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Íd.*; *OEG v. Martínez Giraud*, supra; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012). No obstante, tal norma no es absoluta, es por lo que, nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.

En *Torres Rivera v. Policía de Puerto Rico*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

[L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que **si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida**. (Énfasis suplido).[37]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otros*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, supra, pág. 673; *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otros*, supra, pág. 819-820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, pág. 216.

Bajo este supuesto, la Sec. 4.5 de la Ley Núm. 38-2017, *supra*, "estableció el marco de revisión judicial de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas

---

[37] Véase, *Super Asphalt v. AFI y otros*, supra, págs. 819-820.

por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.* págs. 35-36; *OEG v. Martínez Giraud*, supra*; Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Nobbe v. Jta. Directores*, supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Nuestro Máximo Foro, ha expresado que, esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía*, supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd; OEG v. Martínez Giraud,* supra; *Super Asphalt v. AFI y otros,* supra, pág. 819-820. Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627; Sec. 4.5 LPAU, 3 LPRA sec. 9675. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Rolón Martínez v. Supte. Policía*, supra, págs. 36-37; *Torres Rivera v. Policía de PR*, supra, pág. 627.

El Tribunal Supremo ha dispuesto que, la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales. *Íd.* págs. 627-628; *OEG v. Martínez Giraud*, supra. Finalmente, nuestra más Alta Curia ha expresado que, conforme lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado

incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *Íd.*

**III**

En su ***primer señalamiento***, el recurrente nos plantea, en esencia, que erró la OEG al determinar que la enmienda efectuada al Contrato 2022-0000-10 A, en virtud de la cual se le aumentó la remuneración al señor Michael Silva Vega en $26,120.00, constituyó un contrato nuevo otorgado en violación al Artículo 4.3 (d) de la Ley de Ética Gubernamental, *supra*, por no haber mediado consulta previa a la OEG.

En apretada síntesis, sostiene el recurrente que el Contrato 2022-0000-10 A, en virtud de la cual se le aumentó la remuneración al señor Michael Silva Vega en $26,120.00, constituyó una enmienda al contrato Núm. 2022-000010, el cual, como dijimos, había sido otorgado el 1ro de julio de 2021, por la cantidad máxima de $10,000.00.

Tal y como señalamos previamente, el Art. 4.3(d) de la Ley de Ética Gubernamental, *supra*, respecto a las prohibiciones relacionadas con otros empleos, contratos o negocios, establece que:

> (d) La autoridad nominadora no puede llevar a cabo un contrato en el que un servidor público de la agencia o un miembro de la unidad familiar, un pariente, un socio o una persona que comparta la residencia de este último tenga o haya tenido, directa o indirectamente, un interés pecuniario durante los últimos dos (2) años anteriores a su nombramiento. Esta prohibición no aplica cuando, a discreción de la Dirección Ejecutiva, medien circunstancias excepcionales que hayan sido evaluadas con anterioridad a que la autoridad nominadora contrate con el servidor público o con un miembro de la unidad familiar, un pariente, un socio o una persona que comparta la residencia de este último.

[...].[38]

En síntesis, para que se configure una violación al mencionado artículo, es necesario que concurran los siguientes requisitos: (1) que la autoridad nominadora; (2) lleve a cabo un contrato; (3) en el que el pariente de un servidor público de la agencia tenga o haya tenido, directa o indirectamente, un interés pecuniario y, (4) que no se haya obtenido la autorización de la Dirección Ejecutiva de la OEG, previo a otorgar el contrato.

Conforme surge del expediente ante nuestra consideración, el recurrente, ha fungido como como Administrador de la ADEA desde el 16 de enero de 2021 hasta el presente, con facultad para otorgar contratos.

El 1 de julio de 2021, el recurrente, en el ejercicio de sus facultades como autoridad nominadora de la ADEA, contrató al señor Silva Vega mediante el contrato Núm. 2022-000010, por la cantidad máxima de $10,000.00. La vigencia del aludido contrato sería desde la fecha de su otorgamiento hasta el 30 de junio de 2022.[39]

Desde el **23 de agosto de 2021**, la señora Legrand Muñoz, esposa del señor Silva Vega, había sido nombrada en el puesto de confianza como Oficial Principal de Informática de la ADEA, el cual actualmente ocupa, convirtiéndose así, en servidora pública.

Apenas cuatro días con posterioridad al nombramiento de la señora Legrand Muñoz, **el 27 de agosto de 2021**, el recurrente también como autoridad nominadora, en representación de la ADEA, otorgó con el señor Silva Vega el contrato Núm. 2022-000010A, intitulado *Enmienda Contrato de Servicios Profesionales*.[40] Ello, a los fines de aumentar hasta un máximo de $36,120.00, por

---

[38] 3 LPRA sec. 1857b.
[39] Véase Anejo 3 del recurso del recurrente.
[40] Véase Anejo 5 del recurso del recurrente.

el término del contrato, la cuantía establecida previamente en la cláusula "Cuarta" del Contrato Núm. 2022-000010. La aludida contratación se efectuó sin la debida autorización de la OEG.

La parte recurrente arguye que, desde el 23 de junio de 2021, la ADEA había solicitado autorización a la OGP y a la Oficina de la Secretaría de la Gobernación, para contratar al señor Michael Silva Vega, por la cantidad de $36,120.00, para ofrecer servicios de consultoría en informática y tareas afines a la Oficina de Sistemas de Información. No obstante, esta incidencia procesal resulta irrelevante para adjudicar la controversia ante nuestra consideración. Destacamos que, estamos ante un contrato nuevo, que además de la autorización de la OGP; requería, el aval de la OEG, tal y como dicho foro administrativo lo determinó.

En vista de lo anterior, es un hecho indubitado que, para la fecha en que la autoridad nominadora otorgó el contrato Núm. 2022-000010A, intitulado *Enmienda Contrato de Servicios Profesionales*, por la relación de esposos habida entre la señora Legrand Muñoz y el señor Silva Vega,[41] por mandato de ley, se requería el aval de la OEG para la referida contratación. Tal y como mencionamos previamente, el artículo 4.3 (d) de la Ley de Ética Gubernamental, *supra,* prohíbe expresamente que la autoridad nominadora otorgue un contrato en el que un servidor público de la agencia o un miembro de su unidad familiar, o pariente, tenga directa o indirectamente un interés pecuniario durante los últimos dos (2) años anteriores a su nombramiento.

Habida cuenta de la relación de esposos entre el señor Silva Vega y la señora Legrand Muñoz -quien ya fungía como servidora pública de la misma agencia- sin duda, el recurrente debió haber

---

[41] El señor Michael Silva Vega y la señora Anaishka Suhaily Legrand Muñoz contrajeron matrimonio el 4 de enero del 2019, en San Juan, Puerto Rico. Véase, Anejo 2 del recurso del recurrente.

solicitado autorización a la OEG, previo a otorgar el contrato en controversia y justificar la contratación del señor Silva Vega. Por lo tanto, ante la ausencia de dicha autorización y la prohibición de contratación indicada en el artículo 4.3 (d) de la Ley de Ética Gubernamental, *supra*, la violación al referido precepto legal es incuestionable.

En su ***segundo señalamiento***, plantea el recurrente que erró la OEG al acoger el Informe de la Oficial Examinadora, quien, a su vez, no aplicó el estándar probatorio adecuado cuando se le imputa a un funcionario haber violentado la Ley de Ética Gubernamental.

De ordinario, el *quantum* de prueba necesario para prevalecer en el ámbito administrativo es el de preponderancia de la prueba.[42] Sin embargo, los procedimientos administrativos que suponen violaciones a disposiciones éticas deben ser atendidos a través de un crisol más riguroso. En comparación con los procedimientos éticos que aquí discutimos, las imputaciones al amparo de los Cánones de Ética Profesional,[43] requieren que la prueba sea aquilatada a la luz del estándar de prueba clara, robusta y convincente.[44] Lo anterior, bajo el supuesto de que, en los procesos contra los abogados, está en juego su título y, por ende, el derecho fundamental a ganarse su sustento.

Como dijimos, la prueba clara, robusta y convincente es un estándar intermedio de suficiencia de la prueba que, en esencia, es más exigente que el comúnmente aplicado estándar de preponderancia de la prueba en casos civiles, pero que, a su vez, es menos riguroso que la prueba establecida más allá de duda razonable. Si bien es cierto que el referido estándar no es susceptible

---

[42] *Trib. Exam. Méd. v. Cañas Rivas*, 154 DPR 29, 36–37 (2001).

[43] 4 LPRA Ap. IX.

[44] Véanse, *In re Candelaria Rosa*, 197 DPR 445, 459 (2017) (*Per curiam*); *In re Quiñones Artau*, 193 DPR 356, 386 (2015) (*Per curiam*); *In re Muñoz, Morell*, 182 DPR 738, 750 (2011) (*Per curiam*).

de ser definido de forma precisa, se ha descrito la prueba clara, robusta y convincente como aquella evidencia que produce en un juzgador de hechos una convicción duradera de que las contenciones fácticas son altamente probables.[45] Nótese, además, que aunque se trate de una mera apariencia, el cargo ético debe quedar establecido por prueba clara y convincente, **no afectada por reglas de exclusión ni a base de conjeturas**.[46]

Luego de un ponderado análisis de la controversia de marras, no albergamos duda de que, la agencia recurrida, probó con prueba clara, robusta y convincente que, el recurrente incurrió en violación al artículo 4.3 (d) de la Ley de Ética Gubernamental está respaldada por la evidencia que obra en el expediente. Obra en autos copia de los contratos, así como de la verificación del matrimonio entre los esposos Silva-Legrand. Por tanto, somos del criterio, que, en efecto, la agencia recurrida cumplió con el estándar probatorio según establecido en la reciente decisión de nuestro Tribunal Supremo en *OEG v. Manuel B. Martínez Giraud*, 202 TSPR 93-

Por otro lado, en su **tercer señalamiento de error**, el recurrente nos plantea que, se le violentó su derecho al debido proceso de ley, tanto en su vertiente procesal como en la sustantiva, al no notificarle de la designación de la Oficial Examinadora, privándolo de solicitar la inhibición o descalificación por esta haber sido representante de la OEG ante los Tribunales de Puerto Rico.

De entrada, destacamos que, en su argumentación la parte recurrente no hace referencia a ninguna fuente de derecho que establezca el deber legal de la agencia administrativa de notificarle a las partes la identidad del (la) Oficial Examinador (a), con anterioridad a la celebración de los procedimientos ante su

[45] Señala el Profesor Ernesto Chiesa, "[e]ste estándar se usa cuando está por el medio un derecho demasiado fundamental para permitir ser afectado por la sola preponderancia de la evidencia". E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas, Ediciones* SITUM, 2016, págs. 51–52.
[46] *OEG v. Martínez Giraud,* supra.

consideración. Como sabemos, la LPAU les confiere a los jefes de agencia la facultad de delegar su función de presidir las vistas adjudicativas administrativas.[47] La persona sobre quien recae esa función es seleccionada de acuerdo con su criterio personal. Cuando opta delegar la función de presidir la audiencia, pero retiene la facultad de adjudicar, se entiende que a quien designa es a un oficial examinador. *Tosado v. A.E.E.*, 165 DPR 377, 386 (2005). En esos términos, la Sec. 3.3 de la LPAU establece que, "[t]oda agencia podrá designar oficiales examinadores para presidir los procedimientos de adjudicación que se celebren en ella, los cuales no tendrán que ser necesariamente abogados, particularmente cuando el procedimiento en cuestión es uno informal".[48] Por su parte, la figura del oficial examinador tiene a su cargo la crucial tarea de adjudicar los hechos en controversia durante el transcurso de la vista evidenciaria. Su cargo le exige recopilar, de manera integral, la evidencia presentada en los procedimientos; esto es, es el responsable de la formación del expediente administrativo. Por ende, su importancia como partícipe en los procedimientos, pues debe asegurar que se desarrolle un expediente administrativo que presente adecuadamente la postura de las partes envueltas.[49]

Lo anterior, para que cuando el adjudicador examine el caso en sus méritos, pueda revisarlo completamente *de novo* sin dificultad alguna. Garantizándose así que el adjudicador final lo haga de manera independiente y objetiva, ateniéndose exclusivamente al expediente constituido mediante un proceso justo y libre de influencias.[50]

Ahora bien, sabido es que la celebración de un litigio justo ante un juzgador imparcial es un derecho básico de todo individuo.

---

[47] 3 LPRA sec. 2153.
[48] 3 LPRA sec. 2153.
[49] Véase, *Com. Seg. v. Real Legacy Assurance, supra,* en la pág. 710.
[50] *Íd.* a las págs. 710-711.

Por ende, ante una alegación de parcialidad en un procedimiento administrativo, se debe determinar sobre cual asunto podría existir dicha parcialidad. Es por esto, por lo que las agencias y tribunales deben estar atentos ante alegaciones de parcialidad que se hagan respecto a un oficial examinador sobre aspectos de hechos del caso. *Íd.* Ello, pues cuando el oficial examinador ha prejuzgado cuestiones o hechos específicos del caso, podría dar lugar a su descalificación. En fin, para que prevalezca la alegación de parcialidad, a los efectos de descalificar a un oficial examinador, es necesario que se evidencie su compromiso previo para obtener determinada conclusión con relación a cuestiones específicas del caso. *Íd.* Específicamente, el oficial examinador debe haber incurrido en un comportamiento de un grado tan alto de favoritismo o antagonismo que hace imposible la solución justa del caso. (Citas omitidas). Aquel perjudicado, podrá solicitar la descalificación del funcionario que preside la vista cuando este se aparte de su función de juzgador de los hechos y actúe como acusador; cuando dirija los procedimientos de un modo que subvierta la integridad del proceso, o cuando se evidencia que ha prejuzgado cuestiones fácticas específicas. *Com. Seg. v. Real Legacy Assurance,* supra. a la pág. 715-716.

A tenor con lo anterior, nuestro Tribunal Supremo ha dispuesto que, las meras alegaciones de parcialidad o perjuicio no son suficientes para sostener una alegación de violación al debido proceso de ley. Véase, *Henríquez Soto v. Consejo de Educación Superior,* 120 DPR 194, 210 (1987). Después de todo, para rebatir la presunción de que los administradores que fungen como adjudicadores carecen de parcialidad, las alegaciones deben revelar un verdadero perjuicio o un interés pecuniario o institucional que los descalifique.[51]

---

[51] *Íd.*

Según dispuesto por nuestro ordenamiento jurídico, los procedimientos de descalificación de abogados no constituyen acciones disciplinarias de por sí. *ORIL v. El Farmer Inc.*, 204 DPR 229, 241 (2020); *Job Connection Center v. Sups. Econo*, 185 DPR 585, 596 (2012); *Meléndez v. Caribbean Int'l News*, 151 DPR 649, 660 (2000). Puesto que, la descalificación es una medida preventiva que tiene como fin (1) evitar posibles infracciones a los cánones del Código de Ética Profesional o (2) evitar actos disruptivos de los abogados durante el trámite de un pleito. *ORIL v. El Farmer Inc.*, supra, pág. 241; *Job Connection Center v. Sups. Econo*, supra, pág. 596. Es por lo que, los foros de instancia están facultados para evaluar y resolver las mociones de descalificación cuando estas sean presentadas en los casos que se ventilan ante sí. *Liquilux Gas Corp. v. Berríos Zaragoza*, 138 DPR 850, 864 (1995). Los jueces podrán descalificar a los abogados si ello resulta necesario para lograr la solución justa, rápida y económica de los pleitos. *ORIL v. El Farmer Inc.*, supra, pág. 241. Nuestro más Alto Foro ha dispuesto que "[a]l evaluar lo sustantivo en la procedencia de una descalificación, los tribuales deben hacer un análisis de la totalidad de las circunstancias para valorar si la actuación el abogado constituye un acto disruptivo o si tiene el potencial de desembocar en una violación de los Cánones del Código de Ética Profesional". *Íd*. pág. 242; *Meléndez v. Caribbean Int'l News*, supra, pág. 662.

La descalificación puede darse en dos instancias, ya sea (1) por orden del tribunal *motu proprio*, o (2) cuando el Tribunal accede a solicitud de una parte. En lo pertinente, cuando la parte adversa solicita la descalificación, el Tribunal Supremo ha expresado que, la mera presentación de la moción de descalificación no conlleva automáticamente la concesión de tal petición. *ORIL v. El Farmer Inc.*, supra, pág. 242; *Liquilux Gas Corp. v. Berríos Zaragoza*, supra, pág. 864. Cuando el tribunal evalúe una moción de descalificación,

deberá además evaluar la totalidad de las circunstancias de acuerdo con los siguientes factores: (1) si el solicitante de la descalificación tiene legitimación activa para invocarla; (2) la gravedad de la posible violación ética involucrada; (3) la complejidad del derecho o los hechos pertinentes a la controversia y el *expertise* de los abogados implicados; (4) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y (5) el propósito detrás de la descalificación, es decir, si la moción se está utilizando como mecanismo para dilatar los procedimientos. *Íd.* págs. 242-243; *Liquilux Gas Corp. v. Berríos Zaragoza*, supra, págs. 864-865; *Otano v. Vélez*, 141 DPR 820, 828 (1996); *Job Connection Center v. Sups. Econo*, supra, págs. 597-598.

El juzgador de hechos podrá denegar una solicitud de descalificación presentada por una parte adversa si entiende que esta ha sido interpuesta como una táctica dilatoria del procedimiento. *Íd.*; *Otano v. Vélez*, supra, pág. 828. También podrá ser denegada en instancias donde la solicitud sea considerada frívola o cuando se presenta con el propósito de intimidar a la parte adversa. *Job Connection Center v. Sups. Econo*, supra, pág. 598. Cuando el tribunal atiende una moción de descalificación deberá analizar si la continuación de la representación legal podría causarle perjuicio o una desventaja indebida en el caso a su solicitante. *Íd.*; *ORIL v. El Farmer Inc.*, supra, pág. 243. Asimismo, deberá sopesar el derecho que le asiste a toda persona de escoger con libertad su representación legal. *Íd.* Finalmente, el abogado contra quien se interponga la moción de descalificación tiene derecho a ser oído y a presentar prueba a su favor. *Íd.*; *Job Connection Center v. Sups. Econo*, supra, pág. 598.

Nos queda meridianamente claro que, no surge del expediente ante nos que la parte recurrente haya solicitado oportunamente la

descalificación de la Oficial Examinadora tan pronto advino en conocimiento de su identidad. Ello, a pesar de que el recurrente conocía o debió haber conocido la identidad de la Oficial Examinadora desde al menos, el 25 de mayo de 2022, esta denegó la *Solicitud de Resolución Sumaria* incoada por la OEG.

Como sabemos, nuestra última instancia judicial ha establecido que, "los organismos administrativos cuasijudiciales tienen la facultad de dirimir mociones de descalificación con miras a mantener el orden y control en sus procedimientos y evitar una posible violación a los Cánones de Ética Profesional".[52] Esto, toda vez que los abogados están llamados a observar los mismos principios de ética profesional tanto en los foros administrativos como en los tribunales.[53]

En consonancia con lo anterior, el Tribunal de Apelaciones tiene jurisdicción para revisar interlocutoriamente -por vía de excepción- una orden de descalificación de abogado emitida por una agencia administrativa, a través de las excepciones estatuidas conforme al Art. 4.3 de la LPAU, *supra.*[54]

En otras palabras, de haber estado presentes los requisitos para la descalificación de la Oficial Examinadora, la parte recurrente bien pudo solicitar oportunamente su descalificación ante el foro recurrido y no lo hizo. Por tanto, dicha parte está impedida de plantear el asunto, por primera vez, ante este foro revisor.

Por último, **en su cuarto señalamiento** de error, el recurrente señala que, se le privó de su debido proceso de ley, tanto en el aspecto sustantivo como procesal, al no celebrar una vista presencial para que pudiese presentar prueba testifical para exponer sus razones que lo llevaron a firmar la enmienda para

---

[52] *K-Mart Corp. v. Walgreens of PR, Inc.,* 121 DPR 633, 637-638 (1988).
[53] *ORIL v. El Farmer Inc.,* supra, pág. 244-245.
[54] *Íd.*

adicionar la cuantía de dinero previamente aprobada, y así demostrar que no hubo intención de violar el estatuto. No nos persuade.

Tal y como expusimos previamente, en el ámbito administrativo se reconoce la adjudicación sumaria, sin que ello necesariamente, infrinja el debido proceso de ley que le asiste a toda persona.

En lo pertinente a las resoluciones emitidas sumariamente en los procesos adjudicativos administrativos, la sección 3.7(b) de la LPAU establece que:

> Si la agencia determina a solicitud de alguna de las partes y luego de analizar los documentos que acompañan la solicitud de orden o resolución sumaria y los documentos incluidos con la moción en oposición, así como aquellos que obren en el expediente de la agencia, que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias, ya sean de carácter final, o parcial resolviendo cualquier controversia entre las partes, que sean separable de las controversias, excepto en aquellos casos donde la ley orgánica de la agencia disponga lo contrario.
>
> La agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que (1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho no procede.

Por igual, en consonancia con las disposiciones de la LPAUG, el Reglamento Núm. 8231, sobre Asuntos Programáticos de la Oficina de Ética Gubernamental, *supra*, en su Artículo 6.11, dispone lo pertinente a resolución sumaria de los asuntos adjudicativos ante dicho foro administrativo. Particularmente, el mencionado cuerpo reglamentario dispone lo siguiente:

> Cualquier parte podrá solicitar la resolución sumaria de todas o de cualquiera de las controversias a ser ventiladas en una audiencia mediante la presentación de una moción con no menos de veinte días calendario de antelación a dicha audiencia. La moción establecerá que no existe controversia de hecho esencial que haya que determinar en la audiencia y estará fundada en

documentos, sin limitarse a: declaraciones juradas, certificaciones, grabaciones, videos o fotografías.

Dentro del término de diez días calendario, a partir de la notificación de una moción de resolución sumaria, la parte que se oponga a dicha moción deberá presentar su oposición. En ésta, deberá establecer que existe una controversia real sobre algún hecho esencial a determinar en la audiencia o que la resolución sumaria es inapropiada por alguna otra razón.

No procederá dictar una resolución sumaria si: (1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho no procede.

Si todas las controversias se resuelven mediante una resolución sumaria, no se celebrará audiencia y el oficial examinador procederá a emitir su informe; o el juez administrativo procederá a emitir su resolución final. Si sólo se deciden algunas de las controversias, el oficial examinador emitirá un informe parcial sobre las controversias resueltas; o el juez administrativo emitirá una resolución parcial. La audiencia continuará respecto a las controversias no resueltas.

Examinado de *novo* y concienzudamente el caso ante nuestra consideración, al palio del derecho antes esbozado, coincidimos con la determinación por la vía sumaria emitida por el ente administrativo. Por consiguiente, ante la ausencia de una actuación arbitraria, ilegal, irrazonable o que constituya un abuso de discreción por parte de la agencia administrativa, razonamos que resulta innecesario que intervengamos con su determinación.

**IV**

Por los fundamentos previamente expuestos, se *confirma* la determinación administrativa impugnada.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones